**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAUL SCOTT KLEIN, | No. 12-15456 |
| Plaintiff-Appellant, | D.C. No. 3:08-cv-00191-LRH-VPC |
| v. | |
| BRIAN WILLIAMS, Sr.; CHERYL BURSON; MARYANN MARSH; BRILL; MAGNUM; HAIN; REID KIMOTO, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Submitted September 28, 2017[**]
San Francisco, California

Before: CLIFTON, N.R. SMITH, and CHRISTEN, Circuit Judges.

Plaintiff Paul Scott Klein filed a complaint *pro se* on May 30, 2008, alleging

that Defendants—Reid Kimoto, principal of the Southern Desert Correctional

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Adult High School, and several officials and employees at the Southern Desert Correctional Center ("SDCC")—violated his constitutional rights and that he is thereby entitled to relief under 42 U.S.C. § 1983. He now appeals *pro se* from the district court's grant of a motion to dismiss on the claims against Kimoto and from summary judgment on all but one claim against all other defendants, the verdict in a bench trial on the surviving claim, and the denial of several of his motions. We reverse the district court's decisions as to Klein's retaliation, conspiracy, and supplemental state law claims, but affirm as to the remaining claims.

Klein's claims, divided into 16 counts, stem from three events: Defendants' response to Klein filing a sexual harassment grievance, and two sets of disciplinary proceedings, one that was initiated shortly after Klein complained about the prison's allegedly defective fire alarm system, and another initiated shortly after he brought a civil rights complaint. On appeal, Klein also brings several procedural claims, arguing that the district court erred in denying his motions for discovery and appointment of counsel and dismissing without leave to amend, and that Defendants violated his right of access to the courts.

## I.     Procedural claims

Klein argues that the district court erred in denying his motion for a scheduling order and his discovery request with respect to defendant Kimoto, but

failed to explain what he sought to discover or to provide a reason beyond the general claim that Kimoto had some unspecified information that he did not. Reviewing for abuse of discretion, we affirm the district court's denial of Klein's motions and requests for discovery. *See Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("[A] decision 'to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant.'").

Klein also argues that the district court erred in granting defendant Kimoto's motion to dismiss without advising Klein that he could amend his complaint. A dismissal without leave to amend is reviewed *de novo*. *Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004). Klein failed to show that he would cure deficiencies in his complaint, or provide any examples of the amendments that he would make if given the chance. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). We thus affirm the district court's denial of leave to amend on the basis that amendment would be futile. *See id*.

Klein also argues that complexities in his case, including not having physical access to a law library, lack of legal reference material, the inability to retain legal materials because they were taken by prison officials, and legal inexperience require him to have appointed counsel. We review a denial of a motion for

3

appointment of counsel under 28 U.S.C. § 1915(e) for abuse of discretion. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). The district court has discretion to designate counsel only in "exceptional circumstances." *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an "evaluation of both 'the likelihood of success on the merits [and] the inability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'" *Id.* (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). Klein has not demonstrated a likelihood of success on the merits and he has failed to show that any difficulty litigating his case "derived from the complexity of the legal issues involved." *See id.* Therefore, we find no abuse of discretion in the district court's denial of Klein's motion for appointment of counsel.

We also find unpersuasive Klein's claim that Defendants violated his right of access to the courts. Such a claim requires the prisoner to allege that he suffered an "actual injury." *See Lewis v. Casey*, 518 U.S. 343, 349–51 (1996). This requires Klein to "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id.* at 351. Klein did not allege an "actual injury," nor did he demonstrate that his efforts to pursue a legal claim were hindered. Accordingly, this claim fails.

4

## II.    Substantive claims

### 1.    Kimoto's motion to dismiss

Klein argues that the district court erred in granting defendant Kimoto's

Rule 12(b)(6) motion to dismiss.  The district court concluded that Kimoto was

entitled to qualified immunity as to all of Klein's federal claims and dismissed the

supplemental state law claims for lack of jurisdiction.  Reviewing *de novo* and

taking all plausible facts pleaded as true, we affirm the dismissal of Klein's equal

protection claim,[1] but reverse as to Klein's retaliation, conspiracy, and

supplemental state law claims.  *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.

2005).

A defendant is not entitled to qualified immunity if (1) "the facts alleged

show the [defendant]'s conduct violated a constitutional right," and (2) that

constitutional right was "clearly established" at the time of the alleged violation.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Klein's complaint alleged that Kimoto

retaliated against him for exercising his First Amendment rights in violation of the

---

[1] Klein's equal protection claim was properly dismissed because there is no evidence suggesting that he was discriminated against as a result of his membership in a protected group.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

First and Fourteenth Amendments, and that Kimoto conspired with other defendants to do so.

A First Amendment retaliation claim requires: (1) an assertion that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct; (4) that such action would chill a person of ordinary firmness from future First Amendment activities; and, (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). We have clarified that "[a] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm, that is more than minimal." *Watison*, 668 F.3d at1114 (internal citation and quotation marks omitted). The due process guarantees of the Fourteenth Amendment incorporate the First Amendment's free speech protections and allow them to be enforced against state actors. *Duncan v. Louisiana*, 391 U.S. 146, 148 (1968).

Klein alleged sufficient facts to state a claim for First Amendment retaliation. Klein asserted that Kimoto conspired with defendant prison officials to retaliate against him for filing a grievance alleging that he was sexually harassed while working at the prison school. Specifically, Klein alleged that Kimoto threatened to fire Klein from his job, that the other defendants instructed Kimoto to

6

"use his employer-employee relationship with [a] witness to coerce [this witness to the harassment] into denying having witnessed anything," and that Kimoto disclosed his sexual orientation against his will. Because "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out," Klein's allegation that Kimoto threatened his employment as a result of his filing a grievance is enough to satisfy the "adverse action" element required to state a claim for First Amendment retaliation. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). Here, "the record, taken in the light most favorable to the plaintiff, reveals statements by the defendant that a reasonable factfinder could . . . interpret as intimating that some form of punishment or adverse regulatory action would follow." *Id.* (internal quotation marks omitted).[2]

Klein alleged that Kimoto's threat to terminate his employment occurred after he engaged in the protected conduct of filing a grievance, "a chronology of events from which retaliation can be inferred." *Watison*, 668 F.3d at 1114. Because we have held that a threat of transfer was sufficient to satisfy the "objective standard govern[ing] the chilling inquiry," we conclude that a "person

---

[2] Because we conclude that Klein stated a claim for First Amendment retaliation based on his allegation that Kimoto threatened his employment in response to his filing a grievance, we need not address his other allegations of adverse action, which may also be sufficient to state a retaliation claim.

of ordinary firmness" may have been chilled by the threat to fire him. *Brodheim*, 584 F.3d at 1271. Moreover, although it is not necessary to allege facts demonstrating that Klein's speech was actually inhibited,[3] Klein did in fact allege that he tried to withdraw his grievance out of fear that he was going to lose his job. Finally, Klein's allegation "implicitly pleaded" that Kimoto did not threaten his employment to "advance legitimate goals of the correctional institution." *Watison*, 668 F.3d at 1114–16.

The second prong of the qualified immunity analysis is also fulfilled. There is a clear right under the First Amendment to be free from retaliation for filing prison grievances. *See Rhodes*, 408 F.3d at 567 ("[B]ecause purely retaliatory actions taken against a prisoner for having exercised [the right to file a grievance] necessarily undermine th[e] protections [of the First Amendment], such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."). A reasonable official would have understood that

---

[3] The district court dismissed Klein's retaliation claim in part because he failed to demonstrate that Kimoto's actions impaired his ability to file grievances or lawsuits. Yet, a plaintiff "does not have to demonstrate that his speech was actually inhibited or suppressed." *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005) (internal quotation marks omitted); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.").

threatening to fire an individual in retaliation for that individual's exercise of his right to file a grievance would violate clearly established law.

For similar reasons, we also conclude that Klein adequately pleaded a conspiracy claim. A conspiracy claim under § 1983 requires "(1) the existence of an express or implied agreement among the defendant officers to deprive [the plaintiff] of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (internal quotation marks omitted). Klein pleaded facts sufficient to show an "express or implied agreement" between Kimoto and others to deprive him of his First Amendment rights. According to the complaint, there was no way for Kimoto to find out about Klein's grievance unless prison officials had told him about it (in violation of prison rules). When coupled with Klein's allegation that Kimoto threatened to fire him, this is sufficient to infer an implicit agreement between Kimoto and prison officials to retaliate against Klein for having exercised his First Amendment rights. *See id.* For the reasons already discussed, we conclude that Klein sufficiently pleaded an actual deprivation of his clearly established First Amendment rights resulting from the alleged agreement between Kimoto and the other defendants. *See id.*

We also reverse and remand for consideration of Klein's state law claims, which were dismissed because the court lacked supplemental jurisdiction over the state law claims once the federal claims were dismissed.

## 2.    Summary judgment for remaining defendants

Klein also argues that the district court erred in granting summary judgment on his First, Eighth, and Fourteenth Amendment, equal protection, and state law claims against the remaining defendants. A district court's decision to grant summary judgment is reviewed *de novo*. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011).

Klein's First Amendment claim for retaliation is based on three primary incidents. He first alleges that he was retaliated against for filing a sexual harassment grievance, as noted above. He also alleges that he was retaliated against for reporting problems with the prison fire alarm system, and again for initiating a civil rights complaint.

First, Klein alleged that several of the defendants conspired to get his sexual harassment grievance dismissed and to punish him for having filed it. He alleged that they told Kimoto of the grievance, and conspired with Kimoto to have Kimoto elicit false statements from witnesses to the alleged harassment. Moreover, he

alleged that the defendants disclosed his sexual orientation in retaliation for having filed the grievance.

Taken as true to the extent they are supported by the record, at least some of the alleged facts present a claim for First Amendment retaliation. Specifically, for the same reasons we conclude that Klein stated a claim for retaliation against Kimoto by alleging that Kimoto conspired with the other defendants to get Klein's sexual harassment grievance dismissed and to punish him for filing it, we conclude that the same claim against the other defendants should survive summary judgment. And again, because the state law claims were dismissed for lack of jurisdiction once the federal law claims were dismissed, we also reverse and remand for consideration of those claims in the first instance.

We agree with the district court's grant of summary of judgment as to Klein's retaliation claims based on the disciplinary proceedings, however. Klein has not demonstrated that either of the two disciplinary proceedings against him constituted retaliation. As for the first, Klein was made the subject of disciplinary proceedings after allegedly making inappropriate comments about prison staff. This clearly advances a legitimate correctional goal. So does the termination of his employment in the maintenance department that resulted from the proceedings: According to evidence in the record, the charges against Klein were found to have

11

been substantiated, which, as prison officials told him, "is more than justification for you to be relieved of your duties."

As for the second proceeding, the district court found at the bench trial that "absolutely no evidence of any kind [] suggests that [the administrator who conducted the hearing] was operating from any kind of an improper motive or direction or anything else." All of the evidence suggests that the disciplinary proceeding was both brought and conducted in good faith, and that Klein did not present any facts to the contrary beyond pure speculation. *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

Klein also alleged an Eighth Amendment violation based on the alleged sexual harassment and prison's faulty fire alarm system. "Whether a particular event or condition in fact constitutes cruel and unusual punishment is gauged against the evolving standards of decency that mark the progress of a maturing society . . . . [T]he only requirement is that the [prison official]'s actions be offensive to human dignity." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) (internal quotation marks omitted). Here, Klein alleged that the prison

12

chaplain approached Klein while he was seated at a computer, physically pressed his body against Klein, massaged Klein's back, and ran his hand through Klein's hair while commenting on how "soft" it was. This conduct does not rise to the level that has been found "offensive to human dignity" necessary to represent a constitutional violation. *Schwenk*, 204 F.3d at 1196; *see also Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992) (holding that because the Eighth Amendment's prohibition against cruel and unusual punishment excludes *de minimis* conduct, not "every malevolent touch by a prison guard gives rise to a federal cause of action"). Klein's Eighth Amendment claim based on the prison's faulty fire alarm system also fails, because he did not suffer a "sufficiently serious" injury. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Klein's remaining claims were also properly dismissed. The district court dismissed Klein's Count 13, for emotional distress, as barred by the Prison Litigation Reform Act ("PLRA"). The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e. Klein has not alleged any physical injury or the commission of a sexual act. We thus affirm the dismissal of this claim.

13

Klein also brought vague equal protection claims against the remaining defendants, which fail because he did not point to any evidence that he was discriminated against as a result of his membership in a protected class. *See Lee*, 250 F.3d at 686. The rest of his claims against the remaining defendants were duplicative and therefore properly dismissed.

### 3. Bench trial verdict

Finally, Klein challenges the district court's verdict in the bench trial as to the due process issue raised in Claim 16. The district court denied summary judgment on Klein's procedural due process claim embedded in Count 16 because there was an issue of material fact as to whether Klein was served with a Notice of Charges prior to his disciplinary hearing.

We review a district court's findings of fact following a bench trial for clear error, and its conclusions of law *de novo*. *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1067 (9th Cir. 2008) (en banc). At the trial, the district court concluded that, although Klein did not receive a physical Notice of Charges, Klein had been properly served for the purposes of the Fourteenth Amendment because the charges were read to him, he was informed about what the charges concerned, the charges concerned conduct which had recently happened, and a comprehensive disciplinary hearing was held within 30 days.

14

The district court's findings of fact were not clearly erroneous, and its legal conclusions based on those findings were adequately supported. Accordingly, we affirm the district court's verdict at the bench trial.

**AFFIRMED in part, REVERSED in part.**